STATE OF MAINE                                          SUPERIOR COURT
PENOBSCOT, SS.                                          Docket No. CV-17-145


JENNIFER WINGARD                    )
              Plaintiff,            )
                                    )
                                    )
                                    )
           v.                       )        **ORDER**
                                    )
                                    )
                                    )
EASTERN MAINE MEDICAL CENTER        )
              Defendant.            )


This employment discrimination case was tried to a jury in August, 2019. The jury determined that Ms. Wingard had engaged in activities protected by Maine's Whistleblowers' Protection Act, and that those protected activities were a substantial motivating factor in Eastern Maine Medical Center's (EMMC) decision to terminate her employment as a per diem/pool care manager. The jury awarded the Plaintiff $ 20,000.00 in compensatory damages. On October 30, 2019, the Court held a hearing regarding reinstatement, back pay and front pay. On November 20, 2019, both parties submitted arguments on the issues now before the Court.

Reinstatement, back pay, and front pay are all equitable remedies. While the Court has used some degree of precision in certain mathematical calculations, it has also, given the equitable nature of the award, rounded numbers and made estimations in some instances to reach an equitable result.

Back Pay

Before her employment was terminated, Plaintiff was in a pool/per diem position at EMMC as a care manager. Plaintiff's employment was terminated on December 19, 2016.

Ms. Wingard was earning $ 40.79 per hour, plus $1.00/$1.50 per hour differential for weekend/night work. Thus, her wages would have been approximately as follows:

> 12/19/16 to 4/30/17 - $40.79 per hour plus the differential = $41.79 (the court finds that Ms. Wingard primarily worked weekends)

Over the six month period of time prior to December 19, 2019, Ms. Wingard worked 12.38 hours per week on average. Over the 50 weeks prior to December 19, 2019, she worked approximately 6.4 hours per week on average[1].

---

[1] Earnings during the first six months of 2016 = $6,712.00 and this was before at least one of her 2016 raises. Earnings for the last six months of 2016 = $13,797.00.

The Court is satisfied that the last six months of Ms. Wingard's employment was a time during which EMMC was particularly short of care managers. Ms. Wingard's hours were dependent on EMMC being understaffed or otherwise needing to cover care manager shifts. By the spring of 2017, EMMC revised its staffing to significantly decrease the pool/per diem opportunities for care managers. The Court is satisfied that the shortage was alleviated by April of 2017[2].

Ms. Wingard, who has a great deal of experience in nursing, exerted very little effort to find employment to replace the per diem work she had been doing at EMMC. She did not apply to any advertised per diem/pool positions in the nursing field between December 19, 2016 and the present. The Court is satisfied that there is a nursing shortage and Ms. Wingard would have been hired for a per diem/pool nursing position at EMMC or elsewhere if she pursued such opportunities. EMMC has had open per diem positions from December, 2016 through the present. Plaintiff has been "in good standing" with EMMC this entire period. Yet, Plaintiff has failed to apply to *any open* position at EMMC or anywhere in the Northern Light system or anywhere else. During the first three months of 2017, Plaintiff: a) made an unsolicited inquiry at St. Joseph's Hospital about a position as a care manager and was told there were no weekend positions available, and b) sent her resume to 6 insurance/health care entities inquiring about per diem utilization review positions (unsolicited). These were the only efforts Plaintiff made during this time to find replacement work and none of these efforts were in response to any advertised or otherwise known *open* positions. The Court is satisfied that had Ms. Wingard applied to the various open positions at EMMC or other area health providers, she would have been hired for one or more of them. From March, 2017 to the present (33 months), Plaintiff has made only three more documented attempts and perhaps an additional attempt to find replacement work. Again, these attempts were not applying to any known *open* positions. In April, 2019, Ms. Wingard changed her full-time employment and began working for Kindred Hospice.

The Court awards Ms. Wingard $ 9,975.00 in back pay:
   12.5 hours per week for 19 weeks[3] at $ 42.00[4] per hour = $9,975.00

The Court limits the amount of back pay because of Plaintiff's failure to exercise reasonable diligence to find alternative work. Prior to April 30, 2017, Plaintiff made 7 unsolicited inquires into pool/per diem work; however, she did not apply for *any* advertised or otherwise known *open* position[5]. Between March, 2017 and December, 2017, she exerted no efforts at all to find pool/per diem work. Between 12/19/16 and the present, Plaintiff has not applied for *any open* advertised/known position. She, in effect, removed herself from finding replacement work.

---

[2] Had the Court awarded back pay after 4/30/17, it would have substantially reduced the number of hours going forward from 4/1/17. Additionally, since October, 2018, there has not been any pool/per diem utilization review work available.

[3] 12/19/16 to 4/30/17

[4] The Court has rounded up to approximate those hours when Ms. Wingard would have worked at night and received the $1.50 differential instead of the $1.00 differential.

[5] "[B]ack pay awarded as relief for unlawful employment discrimination is to be reduced by actual earnings on another job during the pertinent period, or by whatever amount [the victim] could with reasonable diligence have earned during that time." *Walsh v. Town of Millinocket*, 2011 ME 99, ¶ 34, quoting *Maine Human Rights Comm'n v. Dept. of Corrections*, 474 A.2d 860, 869 (Me. 1984). Had the Defendant established the amount of money plaintiff could have earned at other health care jobs, the Court probably would not have awarded Plaintiff more than a month or so of back pay, but since Defendant did not do so, the Court has found it equitable to award back pay to the Plaintiff though one month beyond when she last made a very minimal effort to find replacement income.

2

<u>Reinstatement and Front Pay</u>

The Court does not order reinstatement or front pay.

On April 1, 2019, Plaintiff accepted a position at Kindred Hospice as the Director of Operations. She now is in charge of the Kindred hospice program. At trial, Plaintiff testified that her acceptance of this position created a conflict of interest with the duties she had been performing at EMMC when her employment was terminated. The only part of her prior duties she could perform at EMMC while being the Director of Operations at Kindred Hospice, would be utilization review duties. However, there are no longer any pool/per diem positions to perform utilization review. The elimination of the pool/per diem positions was the result of EMMC putting into place a new model of integrated care management and the creation of the "resource center."

Additionally, the Court does not award front pay in that it finds that Ms. Wingard woefully failed to diligently pursue alternative employment opportunities[6]. The Court is satisfied that there is a nursing shortage and Ms. Wingard could quite easily be reemployed in a pool/per diem position at EMMC or elsewhere if she pursued such opportunities.

The Clerk shall enter this Order awarding Plaintiff $ 9,975.00 in back pay upon the record by reference.

Judgment is entered for the Plaintiff in the total amount of <u>$ 29,975.00</u> ($ 20,000.00 jury award of compensatory damages plus $9,975.00 back pay award). The Clerk shall further enter upon this Judgment upon the docket by reference.

December 19, 2019

_____
Ann M. Murray, Justice
Maine Superior Court

ORDER/JUDGMENT ENTERED IN THE
COURT DOCKET ON: 12-20-19

---

[6] While the Court awarded Ms. Wingard back pay despite her lack of effort to mitigate her damages, it does not do so for front pay. The Court does not find it equitable to award front pay to someone who has not made an earnest attempt to find per diem work between 12/16/2016 and 12/2019.

3